## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

MOSES JONES,

     Petitioner,

v.                                          Case No. 4:21-cv-292-WS-MJF

RICKY D. DIXON,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Moses Jones, proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 15. Jones replied. Doc. 18. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Jones is not entitled to habeas relief.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY[2]

On the evening of August 15, 2017, Jones was watching a movie with his girlfriend—Melissa Mills—and her young daughter at Mills's apartment. Jones told Mills that he was going outside to smoke a cigarette. When he returned to the bedroom, he told Mills and her daughter that he loved them, then went back outside ostensibly to smoke again. When Jones returned a second time, he said his head hurt. Mills offered Jones over-the-counter pain medication. Moses left the bedroom to take the medication, but when he returned he was holding a knife —the biggest knife Mills had in her apartment.

Mills told Jones to leave her apartment. After Jones walked out of the bedroom, Mills grabbed a cell phone to call her mother, and gathered her daughter and clothing, thinking she and her daughter could go to her mother's house. Jones reappeared and charged Mills with the knife, striking her in the head and stabbing her in her upper chest. Mills attempted to fight Jones off. Mills ran to the door of the apartment with her daughter in arms, opened the door, and started screaming. Jones pulled Mills back inside and struck her in the head to the point where Mills lost

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. Doc. 15, Exs. 12-13 (Trial Tr.); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

consciousness. When Mills came to, she saw Jones run out of the apartment with her car keys and drive off in her car.

Mills was able to get help from a neighbor and was taken to the hospital. Her injuries were a stab wound to her chest which caused a collapsed lung; a rib fracture from that same stab wound; and lacerations to her head. Mills was in significant pain and required a procedure to reinflate her lung. Her scalp, head and chest lacerations were stapled. Mills spent three days in the hospital.

Jones was charged in Leon County Circuit Court Case No. 2017-CF-2702, with Aggravated Battery Causing Great Bodily Harm with a Deadly Weapon. Ex. 3.[3] The jury found Jones guilty as charged and responded affirmatively to a special interrogatory about whether Jones actually possessed a deadly weapon during the battery. Ex. 4. The trial court adjudicated Jones guilty of the offense and determined that Jones qualified for enhanced sentencing as a Prison Releasee Reoffender. Ex. 4. The trial court sentenced Jones to 30 years of imprisonment. *Id*. As a PRR, Jones must serve 100 percent of the court-imposed sentence. *Id*.; *see also* Fla. Stat. 775.082(8)(b). On April 11, 2019, the Florida First District Court of Appeal ("First

---

[3] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 15. The citation references the exhibit number followed by the page number according to the Bates stamp number at the bottom right corner of the page.

DCA") affirmed the judgment *per curiam* and without written opinion. *Jones v. State*, No. 1D18-654, 272 So. 3d 751 (Fla. 1st DCA 2019) (Table) (copy at Ex. 17).

On July 10, 2019, Jones filed in the state circuit court a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Ex. 22 at 4-16. After an evidentiary hearing where Jones was assisted by counsel, the circuit court denied relief. Ex. 25 at 349-75 (Evidentiary Hr'g Tr.); Ex. 25 at 340 (Order). The First DCA affirmed *per curiam* and without written opinion. *Jones v. State*, No. 1D20-316, 318 So. 3d 543 (Fla. 1st DCA 2021) (Table) (copy at Ex. 29). The mandate issued June 29, 2021. Ex. 29.

Jones filed his *pro se* federal habeas petition on July 12, 2021. Doc. 1 (Mailing Envelope). The petition raises two claims. *Id*. at 5-12. The State asserts that Jones is not entitled to habeas relief because (1) both claims are procedurally defaulted and (2) even if properly exhausted, Jones fails to satisfy § 2254(d)'s demanding standard. Doc. 15.

## II.  RELEVANT LEGAL PRINCIPLES

### A.   Federal Habeas Exhaustion Requirement and Procedural Default

"To respect our system of dual sovereignty, the availability of habeas relief is narrowly circumscribed." *Shinn v. Ramirez*, 596 U.S. ___, 142 S. Ct. 1718, 1730 (2022) (citations omitted). One such constraint is the exhaustion requirement and

corollary principle of procedural default. *See* 28 U.S.C. § 2254(b); *Shinn*, 142 S. Ct. at 1731-32.

Section 2254 "requires state prisoners to 'exhaust the remedies available in the courts of the State' before seeking federal habeas relief." *Shinn*, 142 S. Ct. at 1732 (quoting 28 U.S.C. § 2254(b)(1)(A)) (alteration adopted). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim" to the state's highest court, either on direct appeal or on collateral review. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270-71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the

state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" (quoting *Kelley*, 377 F.3d at 1344-45)).

When a petitioner fails to exhaust his federal claim and the state court remedy no longer is available, that failure to exhaust is a procedural default. *O'Sullivan*, 526 U.S. at 839-40; *see also Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) (holding that when a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim now would be procedurally barred under state law, the claim is procedurally defaulted).

> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, and procedural default protects against the significant harm to the States that results from the failure of federal courts to respect state procedural rules. Ultimately, it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation, and to do so consistent with their own procedures.

*Shinn*, 142 S. Ct. at 1732 (internal quotation marks and citations omitted, alteration adopted).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Lucas v.*

*Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352–53 (11th Cir. 2012). A petitioner establishes "cause" by showing that an objective factor external to the defense impeded an effort to properly raise the claim in the state court. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). A petitioner establishes "prejudice" by showing at least a reasonable probability that the proceeding's result would have been different. *Id*.

To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

**B.    Section 2254 Standard of Review**

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[4] Justice O'Connor described the appropriate test:

---

[4] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia)

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

---

in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under

Page 9 of 34

AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.</u>

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III. DISCUSSION

**Ground One**        **"Mr. Jones Amendment rights were violated due to a conflict of interest." Doc. 1 at 5.**

Jones claims that his rights "under due process of law" were violated when he was "forced to be represented by conflicted counsel." Doc. 1 at 5. Jones explains that he was represented by Justin Ward of the Public Defender's Office and that Ms. Mills also was represented by the Public Defender's Office (Nina Moody) in an unrelated criminal fraud case with a deferred prosecution agreement. Doc. 1 at 6. Jones alleges that although Mills waived any conflict after an extensive colloquy with the court, he did not waive the conflict and, therefore, the court was required to grant Ward's motion to withdraw. *Id*. at 6. Jones maintains that the trial court's "forc[ing]" him to be represented by Ward violated his federal constitutional right to due process, and resulted in "a biased and prejudicial trial." *Id*. at 6-7. Jones asserts that he presented this constitutional claim to the state court on direct appeal. *Id*. at 7.

Page 11 of 34

The State asserts that Jones procedurally defaulted his federal due process claim because on direct appeal, he presented the alleged error as a purely state-law issue and did not apprise the First DCA that the alleged error also violated his federal constitutional rights. Doc. 15 at 13. Because Jones is barred by state procedural rules from returning to state court to present the issue as a federal constitutional claim, the federal claim is procedurally defaulted. *Id*.

This Court need not decide the exhaustion/procedural default issue, because even assuming to Jones's benefit that his direct appeal brief fairly presented his claim as a federal constitutional violation, he fails to meet § 2254(d)'s demanding standard.[5]

---

[5] If Jones's briefing on direct appeal did *not* fairly present the issue as a federal constitutional claim, then Jones's federal claim would be procedurally defaulted because any attempt to return to state court to exhaust the federal claim would be procedurally barred under Florida law. *See Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *see also Smith v. State*, 453 So. 2d 388, 389 (Fla. 1984) (claims that could have been raised on direct appeal are foreclosed from consideration under postconviction relief); Fla. R. Crim. P. 3.850(c).

Jones cannot make any of the required showings to excuse the procedural default. It would be unconvincing for him to argue that the cause of his default was appellate counsel's ineffective assistance in failing to apprise the state court of the federal constitutional nature of his claim, because Jones has not presented an ineffective assistance of appellate counsel claim to the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 447 (2000) ("The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.").

A.    *The State Trial Court's Ruling*

Two days after jury selection, but before the jury was sworn, Jones's defense counsel Justin Ward notified the court that he would be moving to withdraw from the case due to a conflict of interest. Doc. 15, Ex. 12 at 4. The trial court addressed the issue outside the presence of the jury when the parties appeared for the first day of trial on January 25, 2018:

> THE COURT:  I had an informal conference with the attorneys yesterday, in which they indicated the Public Defender was going to be requesting to withdraw in the case based upon conflict of interest.
>
> I haven't seen any pleading, but is that still the Public Defender's position, Mr. Ward?
>
> MR. WARD [Defense Counsel]:  Yes, sir. The issue is that my office is also currently representing the victim, whose case is presently in a deferred prosecution agreement. I've discussed this matter with Mr. Jones and specifically asking whether he would be willing to waive the—any conflict on the case. Mr. Jones is not willing to waive any conflict. Based on that, my office is moving to withdraw.
>
> THE COURT:  Okay. Is that an oral motion, or has there been a written motion filed?
>
> MR. WARD:  There has not been a written motion filed.
>
> THE COURT:  Okay. All right. I believe the case that we're referring to as to the alleged victim, Ms. Mills, is 2016-2550. I just pulled that case up. It would appear that this was filed back in September 2016. Public Defender was appointed June 15, 2017. So within a month of that, on July 13, 2017, a deferred pros – deferred prosecution agreement was filed. And she was placed on pretrial intervention, which is the current status of the case. Is that the case we're talking about?

Page 13 of 34

MR. WARD:  Yes, sir.

Doc. 15, Ex. 12 at 4-5. The prosecutor indicated that she conferred with Ms. Wells and that Wells intended to waive any conflict as well as her attorney-client privilege with the Public Defender's Office. Ms. Mills was placed under oath, and the trial court advised her of the consequences of her waivers:

> THE COURT: Okay. Well, Ms. Mills, you've heard what, what I said. I need to make some inquiry of you. Let, let me be clear. You're not under pressure to do any particular thing. Nobody's going to be mad at you, you know, no matter what decision you make. We just need to make of record this situation and, and how you wish to proceed.
>
> The Public Defender, apparently, was appointed to represent you, as I think you heard me say, back, in June 2017. They had also been appointed to represent Mr. Moses some time after that. I don't have the exact date of that, some, some—it would appear it's probably in August sometime. What should have happened is they should have noted that, and they should not have gone on to represent Mr. Jones. And – because representing two people that have conflicting interests is a conflict of an interest that an attorney can't operate under.
>
> But, anyway, that didn't happen, and here we are today. A jury has been picked, and we're ready to proceed to trial. From my discussion with Ms. Dugan (the prosecutor in Jones's case), she says that you were prepared to waive any type of conflict that might be created by the Public Defender representing you previously.
>
> And let me be clear. That would include anything you told the Public Defender's Office in confidence. What you tell them, normally, is privileged and confidential. They can't use that information. But if Mr. Ward is to continue to represent Mr. Jones, he has to be free to use whatever information is available to him. So that would include, perhaps, information that you told the Public Defender in confidence.

> I've studied on this, and, you know, I view that if, if you're not concerned with that and are prepared to waive that, we can proceed with the trial. If you do not wish to waive that, again, that's fine. Nobody's going to be mad at you. What will happen is we will give Mr. Jones a new attorney, and we'll have to continue the trial. That's the, that's the situation. Do you understand what I've outlined to you?

*Id*. at 6-8. Ms. Mills indicated that she understood the situation, that she waived any conflict and her attorney-client privilege with the Public Defender's Office, and that she wished to proceed. *Id*. at 8.

> The trial court clarified with Mills:

> So you understand that Public Defender's Office was representing you, but now they're going to be free to cross-examine you. And, truthfully, I mean, just to put it in basic terms, they're going to try to show anything to the jury that might make it look like you're not being truthful, try to make you look bad, I guess, would be the best way to put it. You understand that?

> MS. MILLS:  Yes.

> THE COURT:  And you're prepared to waive that?

> MS. MILLS:  Yes.

*Id*. at 8. The trial court allowed counsel to question Mills about her waivers. Mills clarified that her criminal case had not been dismissed. *Id*. at 9. Mills reaffirmed that she wished to proceed and that she waived any conflict and her attorney-client privilege. *Id*. at 9-10.

Jones told the trial court that he believed there was still a conflict, that he was not willing to waive the conflict, and that he wanted conflict counsel appointed. *Id.* at 11-12. The trial judge inquired of Jones:

> THE COURT:  . . . [H]ow do, how do you think it adversely affects you, Mr. Jones?
>
> THE DEFENDANT:  I'm just, I'm just at – I'm hoping –
>
> THE COURT:  I'm a little hard of hearing, Mr. Jones. You're going to have to speak up.
>
> THE DEFENDANT:  I'm hoping – I don't want them to be bias by, by her – by them there to help her and her, her incident turned out so good. So they might just throw me under the bus.
>
> THE COURT:  Why, why would you think that?
>
> THE DEFENDANT:  I don't know. It's just running through my head.
>
> THE COURT:  Okay. All right. Anything else you want to say?
>
> THE DEFENDANT:  No, sir.

*Id.* at 12. The trial court heard argument from counsel, *id.* at 12-13, and denied Ward's motion to withdraw:

> Okay. I – I'm going to deny the request by the Public Defender to withdraw from the case. I don't see that a conflict exists. They are not actively involved in the case at this point. Have not been for about six months. Ms. Mills is prepared to waive any attorney-client privilege or any conflict. So they're free to cross-examine as they see fit. I don't think a conflict exists. I know Mr. Ward yesterday asserted appearance of propo – appearance of propriety [sic].

Page 16 of 34

Frankly, I just don't see that there is anything that looks bad, for want of a better word, at this point in time. Yes, it would have been better, probably, had we found this earlier. I wouldn't have questioned it if early in the case Public Defender had asked to come off the case. I'm not sure why they did not. We were able to find Ms. Mills' case in about a minute on the computer. So it wasn't like it was hidden or anything, but Melissa Mills is a fairly common name. So maybe that was the issue.

Anyway, I don't see that it shows any appearance of impropriety, and I'm going to deny the motion to withdraw by the Public Defender's Office.

*Id*. at 13-14.

During the evidentiary portion of the trial, Ward aggressively cross-examined

Mills:

Q     Ms. Mills, you currently have a pending case with the State Attorney's Office, correct?

A     Yes.

Q     And, in that case, you're charged with a criminal offense?

A     Yes.

Q     That's a fraud case?

A     Yes.

Q     Do you recognize that you could be sentenced to five years in prison on that case?

A     Yes.

Q     But you have an agreement to pay the State approximately $5,000 to get them to drop the case?

A     Yes.

Q     You recognize that if you're caught using drugs, that they'll violate the deferred prosecution agreement?

A     Yes.

Q     You recognize that if you caused an incident like this, for example, if you stabbed Mr. Jones, that that would violate your agreement?

A     Yes.

Q     And any of these things could cause you to get five years in prison.

A     Yes.

Q     Do you understand that if you lied to police that that would, also, be a criminal offense that would violate your agreement?

A     Yes.

Q     Do you recognize that if you changed your testimony now, that would violate your agreement?

A     Yes.

Q     Any of these things could cause you to get five years in prison.

A     Yes.

Q     And so now you're reiterating what you told the police? You're saying the same thing, again?

A    Yes.

Q    Because you know that if you said something else, it could violate your agreement?

A    Yes.

*Id*. at 69-70.

On re-direct, the prosecutor questioned Mills about the deferred prosecution agreement. *Id*. at 71-72. The DPA concerned a charge of unemployment compensation fraud where Mills worked too many hours to also collect unemployment compensation. *Id*. at 71. The DPA required Mills to repay the fraudulently obtained benefits. *Id*. at 71-72. Mills entered the DPA prior to the stabbing incident underlying Jones's criminal case. *Id*. at 72.

## B.    *The State Appellate Court's Decision*

On direct appeal, Jones argued that the trial court erred in denying Ward's motion to withdraw because another member of his office represented Mills in an unrelated criminal matter. Ex. 14. Jones argued that because he was unwilling to waive the alleged conflict, the court "should have allowed him to go to trial with conflict-free counsel." *Id*. at 19. Jones identified this standard of review:

> A ruling on a motion by a public defender to withdraw from representation is within the trial court's discretion, as the applicable section of Florida Statutes does not mandate granting such a motion. *See* § 27.5303, Fla. Stat. (2018). However, as discussed below, that discretion is limited by the possibility that requiring a defendant to

proceed with an ethically conflicted attorney is a denial of the effective assistance of counsel. *See Smith v State*, 156 So. 3d 1119 (Fla. 1st DCA 2015). When a motion to withdraw is made before trial, the court's discretion should be exercised to determine whether the potential for conflict exists, not whether an actual conflict has been shown. *See Kolker v. State*, 649 So. 2d 250, 251-52 (Fla. 3d DCA 1994).

Doc. 14 at 20. The First DCA summarily affirmed without explanation. Ex. 17.

### C.   *Jones Is Not Entitled to Habeas Relief*

Assuming to Jones's benefit that his direct appeal brief fairly presented a federal constitutional claim arising from the alleged conflict of interest, the First DCA's summary affirmance of Jones's conviction is an "adjudication on the merits" of that claim and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *Id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does

provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. —, 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Jones's claim for the reasons provided by the state circuit court.

Jones claims that the trial court's denial of Ward's motion to withdraw violated the Constitution because Ward was laboring under a prohibitive conflict of interest. "[T]he Sixth Amendment does more than require the States to appoint counsel for indigent defendants. The right to counsel prevents the States from conducting trials at which persons who face incarceration must defend themselves without adequate legal assistance." *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). "The effective assistance of counsel demands not only a minimally competent lawyer, but also counsel unburdened by a conflict of interest that impedes zealous representation." *Dallas v. Warden*, 964 F.3d 1285, 1302 (11th Cir. 2020), *cert. denied sub nom. Dallas v. Raybon*, 142 S. Ct. 124 (2021).

In *Holloway v. Arkansas*, 435 U.S. 475 (1978), the Supreme Court held that "whenever a trial court improperly requires joint representation over timely objection reversal is automatic." 435 U.S. at 488. *Holloway*'s automatic reversal rule, however, "is limited only to those circumstances where a trial court improperly

requires the *joint representation of codefendants* overly timely objection." *Dallas*, 964 F.3d at 1303 (emphasis added).

"In the absence of the joint representation of *codefendants*, the appropriate legal standard is found in *Sullivan*, which requires a showing that an actual conflict of interest adversely affected defense counsel's performance." *Dallas*, 964 F.3d at 1303 (citing *Sullivan*, 446 U.S. at 349-50); *see also Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002) ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."). "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Sullivan*, 446 U.S. at 350.

Jones argues that the fact that both he and Mills were represented by the Public Defender's Office was a conflict of interest that was presumptively prejudicial to him. Doc. 1 at 6-7. But this case did not involve joint representation of codefendants. Whether a presumption of prejudice applies beyond cases involving concurrent representation of codefendants is "as far as the jurisprudence of [the Supreme] Court is concerned, an open question." *Mickens*, 535 U.S. at 176. Thus, the state courts' conclusion that a presumption of prejudice did not apply in this context is not "contrary to, or an unreasonable application of, clearly established Federal law, as

Page 22 of 34

determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). *See Lopez v. Smith*, 574 U.S. 1, 6 (2014); *Woods v. Donald*, 575 U.S. 312, 317 (2015); *Schwab v. Crosby*, 451 F.3d 1308, 1327 (11th Cir. 2006) (rejecting petitioner's claim that the state court erred by not presuming prejudice arising from the public defender's continued representation of petitioner even though members of the public defender's office would be testifying at trial about the chain of custody of a letter received concerning the petitioner's case). Nor is the failure to extend the limited presumption of prejudice to this new context unreasonable either. *Schwab*, 451 F.3d at 1327; *see also, e.g., Hand v. Sec'y, Dep't of Corr.*, 305 F. App'x 547, 550 (11th Cir. 2008) ("Because the alleged conflict in this case does not involve the representation of multiple defendants, the state court's decision was not contrary to or an unreasonable application of the *Sullivan* rule.).

Jones, therefore, was required to show that Ward operated under an actual conflict, that is, a conflict that adversely affected Ward's performance. A fairminded jurist could concur in the state court's conclusion that Jones failed to make that showing. Based on the information adduced at the motion hearing, a reasonable jurist could find that neither Ward nor Jones showed that Ward was actively representing conflicting interests. Doc. 15, Ex. 12 at 4-13. Neither of them articulated how Ward's continued representation of Jones could or would adversely affect Ward's

performance. *Id*. The only potential adverse effect that came to light during the motion hearing inured to Ms. Mills, not Jones.

Jones's direct appeal brief fared no better. Jones did not assert that Ward was hindered in any way in either his ability to cross-examine Mills, or otherwise. The trial transcript confirms that Ward's performance was *not* adversely affected by the Public Defender's Office's representation of both Mills and Jones. Ward held nothing back in testing the credibility and reliability of Mills's testimony. Doc. 15, Ex. 12 at 69-70.

The state court's rejection of Jones's claim was not "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Nor was the decision based on an unreasonable determination of the facts. Jones is not entitled to habeas relief on Ground One.

**Ground Two**       **"Ineffective assistance of counsel for failing to file post-verdict motion." Doc. 1 at 10.**

Jones claims that Ward was ineffective for failing to file a post-verdict motion for a new trial based on the alleged conflict of interest. Doc. 1 at 10-12. Jones relies on the facts discussed above to support this ineffective-assistance claim. Jones asserts that had Ward filed a motion for a new trial based on the alleged conflict, "the court would have done the right thing and granted a new trial." *Id*. at 11-12.

Jones states that he exhausted this claim by presenting it in his Rule 3.850 proceeding. *Id*. at 10, 13.

The State asserts that Jones procedurally defaulted this claim because he never presented it to the state courts. The ineffective-assistance claim Jones raised in his Rule 3.850 proceeding asserted that Ward was ineffective for failing to discover and promptly inform the court—*prior to trial*—that his office was representing Mills in her fraud case. Doc. 15 at 13, 26. The State alternatively argues that even if this claim were deemed properly exhausted, Jones is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. *Id*. at 26-30.

Jones's reply does not address the State's procedural default defense. Instead, Jones argues *both* claims: (1) Ward was ineffective for failing to promptly inform the court *before trial* of the alleged conflict; and (2) Ward was ineffective for failing to file a *post-trial* motion for a new trial based on the alleged conflict. Doc. 18.

### A.    *Jones Procedurally Defaulted His Claim Concerning Ward's Failure to File a Post-Verdict Motion for New Trial*

Jones's Rule 3.850 motion raised a single claim—that Ward was ineffective for failing to promptly discover and notify the court, *prior to trial*, that the Public Defender's Office represented Mills in the unrelated unemployment compensation fraud case. Doc. 15, Ex. 22 at 4-16. In support. Jones alleged, and testified at the Rule 3.850 evidentiary hearing, that he notified Ward weeks before trial of the

Page 25 of 34

alleged conflict but Ward inexplicably delayed moving to withdraw until after jury selection. Doc. 15, Ex. 22 at 4-16; Ex. 25 at 351-55 (Jones's Evidentiary Hr'g Test.), 367-68 (Evidentiary Hr'g Closing Argument). Jones's postconviction appellate brief presented the same claim. Ex. 26.

In Jones's Rule 3.850 proceeding and appeal, he made no mention of Ward's having failed to file a *post-verdict motion for new trial*. Accordingly, that claim is unexhausted. *See Ogle v. Johnson*, 488 F.3d 1364, 1369 (11th Cir. 2007) ("'[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously.'" (quoting *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992)); *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (to satisfy the exhaustion requirement, a petitioner must have presented the instance of ineffective assistance that he asserts in his federal petition such that a reasonable reader would understand the claim's particular legal basis and specific factual foundation ).

Because Jones is barred from returning to state court to present this instance of ineffective assistance in a successive Rule 3.850 motion, the claim is procedurally defaulted. *See* Fla. R. Crim. P. 3.850(h). Jones makes none of the requisite showing to excuse his procedural default. Jones's procedural default bars habeas review of his claim concerning a post-verdict motion for new trial.

**B.**    ***Jones Is Not Entitled to Habeas Relief on His Claim that Counsel Was Ineffective for Failing to Promptly Discover and Notify the Trial Court of the Alleged Conflict***

      **i.**    <u>**The State Court's Decision**</u>

At the conclusion of the postconviction evidentiary hearing, the state circuit court denied Jones's claim for these reasons:

> Okay. I'm going to deny the motion for post-conviction relief. I mean, it's obviously an issue I was involved in from the inception.

> First, let me comment on the testimony. I reject the Defendant's testimony that he had told Mr. Ward about this well before trial. The PD's office in this circuit and Mr. Ward in particular is quick to bring a conflict to the Court's case [sic], they do it time after time.

> I accept that Mr. Ward brought it to the Court's attention as soon as he was aware of it. As the record reflects, it actually was brought to the Court's attention informally the day before we started the trial so to give me a head's up that it was coming.

> And I was told that the victim was prepared to waive the conflict. And I said if that occurred I was not going to accept the Public Defender's motion to withdraw. This is not a chronic [sic—*Cronic*] situation where there is an actual conflict.

> It depends what definition of open you use to decide whether this case against Ms. Mills was open. It was theoretically open just as every Defendant who is on probations case is theoretically open. But there was no active legal work being done in the case and had not been any active work done in the case in quite some time. She was on pre-trial intervention which means that if she successfully completed that the State would nolle pros the charges. I don't find it's a [*Cronic*] situation with an actual conflict.

Page 27 of 34

As I said at the time, it would have been better if the potential conflict was recognized prior to trial but since we had reached the point we had I declined to let the Public Defender withdraw.

I can find no ineffective assistance of counsel. I guess the only theory of ineffective assistance of counsel would have been that the Public Defender's Office should have identified the conflict earlier. You know, that's pretty theoretical, perhaps that's the case, perhaps not. Is that ineffective assistance of counsel such that warrants a 3.850 motion, I don't know and I don't think I have to resolve that.

The easier decision is the Defendant was in no way prejudiced. He was given an opportunity then, he was given an opportunity today to explain why he was prejudiced by Mr. Ward continuing to represent him. He didn't then and he hasn't now shown any way in which he was prejudiced by representation.

The suggestion by Mr. Miller [Postconviction Counsel] on cross examination that Ms. Mills was not properly cross examined is refuted by the record, it's simply not true. Mr. Ward did cross examine Ms. Mills about her current pending situation in terms of being on pre-trial intervention that if she violated pre-trial intervention she could face charges by the State and what the circumstances are [sic] of those were. It was th[o]roughly pursued.

If anything, the Defendant was advantaged by the situation in that Mr. Ward was able to go to her file in his office and see whether there was any information that would be to the Defendant's advantage. As it turned out, there wasn't anything significant there but that was an advantage to Mr. Jones, not a disadvantage to Mr. Jones.

Therefore, I think it is crystal clear that Mr. Jones was not prejudiced in any way and I deny his motion for post-conviction relief.

Doc. 15, Ex. 25 at 371-74. The First DCA summarily affirmed without explanation.

Ex. 29.

The First DCA's summary affirmance is an "adjudication on the merits" of Jones's claim, and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Because the First DCA's decision was unexplained, this court presumes that the First DCA adopted the state circuit court's reasoning. *Wilson*, 138 S. Ct. at 1192.

### ii.    <u>Clearly Established Federal Law</u>

Jones's ineffective-assistance claim is governed by the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687.

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting

*Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### iii.    <u>Jones Fails to Satisfy § 2254(d)'s Demanding Standard</u>

With regard to the first element of § 2254(d)(1), there is no merit to Jones's argument that the state court's decision was contrary to clearly established federal law because the state court utilized the principles announced in *Strickland* instead of applying *United States v. Cronic*, 466 U.S. 648 (1984). At no point during trial was Jones actually or constructively denied the presence of counsel. *See Bell v. Cone*, 535 U.S. 685, 695-96 & n.3 (2002). The failure to promptly discover the alleged conflict and move to withdraw is a specific attorney error that is subject to *Strickland*'s performance and prejudice components. *Cf. Bell*, 535 U.S. at 695-98

(holding that the failure of an attorney to perform specific tasks was insufficient for the second *Cronic* exception and should be judged under the *Strickland* standard). Thus, the state court correctly identified the principles announced in *Strickland* as those governing the analysis of Jones's claim.

In reviewing the reasonableness of the state court's application of the *Strickland* standard, this court defers to the state court's factual findings, because they are amply supported by the record and because Jones has not rebutted them with clear and convincing evidence to the contrary. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." (citing 28 U.S.C. § 2254(e))). This deference extends to the state court's findings that Jones's evidentiary hearing testimony was not credible, and that Ward's testimony was credible. Eleventh Circuit precedent requires this deference. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

Page 31 of 34

Based on the state-court record and the state court's factual findings, it's rejection of Jones's claim for failure to satisfy *Strickland*'s prejudice prong was reasonable. Jones failed to meet his high burden to show that he was prejudiced by Ward's failure to discover the alleged conflict earlier and his continued representation of Jones. Ward extensively cross-examined Wells and, as the trial court noted, had the additional advantage of access to privileged information in Mills's criminal case, which a conflict attorney would not have had. Jones offers nothing from which a reasonable jurist could conclude that a different trial outcome was reasonably likely had new counsel been appointed.

The state court's rejection of Jones's claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law. Nor was the decision based on an unreasonable determination of the facts. Jones is not entitled to habeas relief on either of his ineffective-assistance subclaims.

## IV. CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

Page 33 of 34

1.  The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Moses Jones*, Leon County Circuit Court Case No. 2017-CF-2702, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Pensacola, Florida, this <u>24th</u> day of October, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**